Pfeifer, J.,
dissenting.
{¶ 53} This case presents this court’s first opportunity to address the Public Utilities Commission of Ohio’s application of the significantly-excessive-earnings test (“SEET”) established by R.C. 4928.143(F). Through the SEET, the commission is to determine how much is too much for electric utilities to charge Ohio consumers pursuant to an electric security plan (“ESP”). It is a determination made after the fact, after consumers have paid their bills, in seeming adherence to the aphorism “It is better to beg forgiveness than ask permission.” But the return on investment that the commission allows in this case is not forgivable. It should not be ratified by this court.
{¶ 54} This case tests whether the commission’s discretion on SEET matters is truly susceptible of meaningful judicial review. This court cannot allow its deference to the commission’s discretion to become an abdication of our duty to provide appellate review of the commission’s orders. The commission’s outra *404 geous order in this case indicates that the commission believes that its orders have no requirement of reasonableness and that it has carte blanche to interpret statutes as it sees fit. But it is answerable to this court in applying laws passed by the General Assembly and is ultimately statutorily responsible to consumers to provide electric service for reasonable rates.
{¶ 55} Columbus Southern Power (“CSP”) requests that this court overturn the commission’s order in this case because, it argues, R.C. 4928.143(F) is unconstitutionally vague. We should overturn the commission’s entire order, but not for the reason CSP suggests. Instead, we should hold that the commission abused its discretion in establishing a SEET threshold of 17.6 percent and, further, misapplied R.C. 4928.143(F) by removing off-system sales from its calculation of CSP’s income. The commission should start from scratch in this case.
The Reasonableness of 17.6 Percent
{¶ 56} In this case, the commission determined CSP’s SEET threshold to be 17.6 percent. That is, only a return on investment of more than 17.6 percent in 2009, a year when the United States’ economy was in a recession, would be considered significantly excessive in comparison to other similarly situated entities. Only at that number would CSP’s profit be enough to trigger a refund to consumers.
{¶ 57} How did the commission get to 17.6 percent? By employing the highly complex statistical analysis known as “splitting the baby.” As the commission points out in its order, AEP-Ohio argued for a SEET threshold of 22.51 percent. The customer parties in the case put forth a proposed SEET threshold in the range of 11.58 percent to 13.58 percent, an average of 12.58 percent. With those numbers to work with, the commission apparently raced to the middle: the halfway point between the proposed SEETs of the customer parties and AEP-Ohio is 17.545 percent. AEP-Ohio got the .055 percent round-up.
{¶ 58} This might be all well and good were the numbers reflective of equally valid methodologies. But the commission’s judgments before and after the case at issue support the number put forth by the customer parties.
{¶ 59} After the passage of Am.Sub.S.B. No. 221, the commission sought input from stakeholders to determine the methodology for determining what constitutes significantly excessive earnings. After a long process from October 2009 through April 2010 that included a workshop, a comment period, a period to reply to comments, and a question-and-answer period before the commission, the commission produced In re Investigation into the Development of the Significantly Excessive Earnings Test Pursuant to Amended Substitute Senate Bill for Electric Utilities, Pub. Util. Comm. No. 09-786-EL-UNC, a finding and order intended to provide guidance on the interpretation and application of R.C. *405 4928.142(D)(4), 4928.143(E), and 4928.143(F). After reviewing the input from interested parties, the commission came to the following conclusion regarding how to determine whether a utility’s earnings are significantly excessive:
Having fully considered all the comments regarding establishing the threshold and in consideration of the discretion afforded the Commission in SB 221, the Commission concludes that “significantly excessive earnings” should be determined based on the reasonable judgment of the Commission on a case-by-case basis.
09-786-EL-UNC Finding and Order, 28-29. So much for predictability.
{¶ 60} Despite leaving the matter up to itself and its own judgment, the commission did set one important marker:
[T]he Commission is willing to recognize a “safe harbor” of 200 basis points above the mean in the comparable group. To that end, any electric utility earning less than 200 basis points above the mean of the comparable group will be found to not have significantly excessive earnings.
Id. at 28-29.
{¶ 61} It was that 200 basis points “safe harbor” that the customer parties based their excessive-earnings conclusion upon. Taking their calculation of a relevant return on investment of 9.58 percent for a comparable group of companies, they argued that significantly excessive earnings should run from the safe-harbor amount of 200 basis points up to 400 basis points. This would mean that significantly excessive earnings would fall somewhere between 11.58 and 13.58 percent. Instead, the commission established a figure 800 basis points above the figure that the customer parties determined as the mean of the comparable group of companies.
{¶ 62} Even accepting the commission’s return-on-investment figure of 11 percent for comparable companies, the commission’s 17.6 percent figure is over 600 basis points above the mean in the comparable group. The commission blew its safe harbor out of the water.
{¶ 63} And in a case announced in August of this year, In re Columbus S. Power Co., Pub. Util. Comm. Nos. 11-346-EL-SSO, 11-348-EL-SSO, 11-349-EL-AAM, and 11-350-EL-AAM, 2012 WL 3542177, *30 (Aug. 8, 2012), the commission prospectively set a SEET threshold at 12 percent for AEP-Ohio, finding it “appropriate to establish a significantly excessive earnings test (SEET) threshold to ensure that the Company does not reap disproportionate benefits *406 from the ESP. The evidence in the record demonstrates that a 12 percent [return on equity] would be at the high end of a reasonable range for return on equity * * *. Accordingly, for purposes of this ESP, the Commission will establish a SEET threshold for AEP-Ohio of 12 percent.”
{¶ 64} That lower rate of return is appropriate for an industry with minimal risk, with built-in methods to recover costs from their customers. In In re Columbus S. Power Co. (Aug. 8, 2012), for instance, built-in protections for the utility include an alternative-energy rider, a generation-resource rider, a retail-stability rider, a distribution-investment rider, a pool-modification rider, a phase-in recovery rider, a transmission-cost-recovery rider, an enhanced-service reliability rider, an energy-efficiency and peak-demand reduction rider, an economic-development rider, and a storm-damage-recovery mechanism.
{¶ 65} Most importantly, the lower SEET is consistent with the policy of this state to “[e]nsure the availability to consumers of adequate, reliable, safe, efficient, nondiscriminatory, and reasonably priced retail electric service.” R.C. 4928.02(A).
Off-System Sales
{¶ 66} The commission also erred in excluding CSP’s off-system sales from the calculation of its return on investment, without any statutory authority. This court has “complete and independent power of review as to all questions of law” in appeals from the commission. Ohio Edison Co. v. Pub. Util. Comm., 78 Ohio St.3d 466, 469, 678 N.E.2d 922 (1997). We should not forget that. This court has held that in matters of statutory interpretation, “we may rely on the expertise of a state agency in interpreting a law where ‘highly specialized issues’ are involved and ‘where agency expertise would, therefore, be of assistance in discerning the presumed intent of our General Assembly.’ ” Ohio Consumers’ Counsel v. Pub. Util. Comm., 111 Ohio St.3d 300, 2006-Ohio-5789, 856 N.E.2d 213, ¶ 12, quoting Consumers’ Counsel v. Pub. Util. Comm., 58 Ohio St.2d 108, 110, 388 N.E.2d 1370 (1979).
{¶ 67} This is not a case in which this court needs to rely on the commission’s interpretation of a statute. Indeed, we should not simply assume that any statute involving public utilities concerns “highly specialized issues.” Here, the General Assembly spells out in plain English what it means by “excessive earnings.” Excessive earnings are “measured by whether the earned return on common equity of the electric distribution utility is significantly in excess of the return on common equity that was earned during the same period by publicly traded companies, including utilities, that face comparable business and financial risk, with such adjustments for capital structure as may be appropriate.”
*407 McNees, Wallace & Nurick, L.L.C., Samuel C. Randazzo, Frank P. Darr, and Joseph E. Oliker, for appellant and cross-appellee Industrial Energy Users-Ohio.
Boehm, Kurtz & Lowry, David F. Boehm, and Michael L. Kurtz, for appellant and cross-appellee Ohio Energy Group.
Bruce J. Weston, Ohio Consumers’ Counsel, Maureen R. Grady, Melissa R. Yost, and Kyle L. Yerrett, for appellant and cross-appellee Ohio Consumers’ Counsel.
' Steven T. Nourse and Matthew J. Satterwhite; and Porter, Wright, Morris & Arthur, L.L.P., Kathleen M. Trafford, and Daniel R. Conway, for appellee and cross-appellant Columbus Southern Power Company.
Michael DeWine, Attorney General, William L. Wright, Section Chief, and Thomas W. MeNamee, Assistant Attorney General, for appellee Public Utilities Commission of Ohio.
Arthur E. Korkosz and Carrie M. Dunn, for amici curiae Ohio Edison Company, Cleveland Electric Illuminating Company, and Toledo Edison Company.
Colleen L. Mooney, for amicus curiae Ohio Partners for Affordable Energy.
{¶ 68} I would hold that CSP’s off-system sales should have been included in the determination of whether CSP’s earnings were significantly excessive. They were, after all, earnings. The statute does not allow for removing any amount of income — either from the utility at issue or from the comparable publicly traded companies — from the assessment. The statute seeks an “apples to apples” comparison; taking a few slices out of the Ohio utility’s apples skews the evaluation.
{¶ 69} Our deference to — or, too often, our reliance on — the commission’s interpretation of statutes diminishes this court’s role in reviewing the commission’s determinations and shifts the balance too far in favor of the executive branch in the separation of powers. Ultimately, Ohio consumers pay the price for that deference. Judging from Ohio utilities’ status at the top of the heap in profits nationwide — CSP had the highest equity return of 143 investor-owned regulated electric utilities in the United States in 2009 — that price is steep.